Not for Publication

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| : | | |
| **UNIVERSITY SPINE CENTER,** | : | |
| on assignment of Zaina A., | : | |
| | : | |
| **Plaintiff,** | : | **Civil Action No. 17-10978 (ES) (SCM)** |
| | : | |
| **v.** | : | |
| | : | **MEMORANDUM OPINION** |
| **UNITED HEALTHCARE,** | : | |
| | : | |
| **Defendant.** | : | |
| | : | |

SALAS, DISTRICT JUDGE

This matter comes before the Court upon Defendant United Healthcare's ("Defendant") motion to dismiss Plaintiff University Spine Center's ("Plaintiff") Complaint under Federal Rule of Civil Procedure 12(b)(6). (D.E. No. 7). The Court has reviewed the parties' submissions in support of and in opposition to the instant motion[1] and decides this matter without oral argument under Federal Rule of Civil Procedure 78(b). For the reasons below, Defendant's motion to dismiss Plaintiff's Complaint is GRANTED.

*Background.* The Court presumes that the parties are familiar with the factual context and the procedural history of the action and will only set forth a brief summary here.[2] On August 18, 2016, Plaintiff provided medical services to Zaina A (the "Patient"). (D.E. No. 1-1 ("Compl.") ¶¶ 3-6). Plaintiff obtained an assignment of benefits from the Patient to bring this claim under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1002, *et seq.* (*Id.* ¶ 6).

---

[1]     (D.E. No. 7-3 ("Def. Mov. Br."); D.E. No. 9 ("Pl. Opp. Br."); D.E. No. 12 ("Def. Reply Br.")).

[2]     This background is derived from Plaintiff's Complaint, which the Court must accept as true for purposes of resolving the pending motion to dismiss. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bistrian v. Levi*, 696 F.3d 352, 358 n.1 (3d Cir. 2012).

Plaintiff asserts that, pursuant to the assignment of benefits, it prepared Health Insurance Claim Forms ("HICFs") formally demanding reimbursement from Defendant in the amount of $178,722.00 for the medical services provided by Plaintiff to the Patient. (*Id.* ¶ 7). Plaintiff alleges that Defendant, however, allowed reimbursement totaling only $2,523.18 for the Patient's treatment. (*Id.* ¶ 8). Thereafter, Plaintiff engaged in the applicable administrative appeals process maintained by Defendant to recover the additional payment and request a copy of the Summary Plan Description, Plan Policy, among other things. (*Id.* ¶¶ 9-11). Defendant failed to remit additional payment in response to Plaintiff's appeal and also failed to produce the requested documents. (*Id.* ¶ 11). Taking into account any known deductions, copayments and coinsurance, Plaintiff claims it was underpaid by $176,198.82. (*Id.* ¶ 13). Accordingly, on September 12, 2017, Plaintiff commenced an action in New Jersey Superior Court, Passaic County, alleging breach of contract (Count I); failure to make all payments pursuant to member's plan under 29 U.S.C. § 1132(a)(1)(B) (Count II); and breach of fiduciary duty under 29 U.S.C. §§ 1132(a)(3), 1104(a)(1), and 1105(a) (Count III). (*Id.* ¶¶ 15-32). Defendant removed the action to this Court on November 3, 2017. (D.E. No. 1). And on December 18, 2017, Defendant moved to dismiss Plaintiff's Complaint.

*Legal Standard.* Pursuant to Federal Rule of Civil Procedure 12(b)(1), the Court must dismiss a complaint if it lacks subject matter jurisdiction. "Ordinarily, Rule 12(b)(1) governs motions to dismiss for lack of standing, as standing is a jurisdictional matter." *N.J. Brain & Spine Ctr. v. Aetna, Inc.*, 801 F.3d 369, 371 n.3 (3d Cir. 2015). However, when statutory limitations to sue are non-jurisdictional, as is the case where a party claims derivative standing to sue under ERISA § 502(a), a motion to dismiss challenging such standing is "properly filed under Rule 12(b)(6)." *Id.* Regardless, "a motion for lack of statutory standing is effectively the same whether it comes under Rule 12(b)(1) or 12(b)(6)." *Id.* (citation omitted).

On a motion to dismiss for lack of standing, the plaintiff "'bears the burden of establishing' the elements of standing, and 'each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation.'" *FOCUS v. Allegheny Cty. Court of Common Pleas*, 75 F.3d 834, 838 (3d Cir. 1996) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)). "For the purpose of determining standing, [the Court] must accept as true all material allegations set forth in the complaint, and must construe those facts in favor of the complaining party." *Storino v. Borough of Point Pleasant Beach*, 322 F.3d 293, 296 (3d Cir. 2003) (citing *Warth v. Seldin*, 422 U.S. 490, 501 (1975)).

Where, as here, a plaintiff's claims are based on a health benefits plan that is referenced in a complaint, a court may consider the plan documents without converting a motion to dismiss into a motion for summary judgment. *See Kayal Orthopaedic Ctr., P.C. v. Empire Blue Cross Blue Shield*, No. 16-9059, 2017 WL 4179813, at *3 (D.N.J. Sept. 21, 2017); *Briglia v. Horizon Healthcare Servs., Inc.*, No. 03-6033, 2005 WL 1140687, at *3 (D.N.J. May 13, 2005). Here, the Complaint relies on the terms of the Patient's health benefits plan. (Compl. ¶¶ 3, 12, 14).

*Analysis.* The parties agree that this case is governed by ERISA. (Def. Mov. Br. at 1; Pl. Opp. Br. at 1).[3] Under § 502(a) of ERISA, "a participant or beneficiary" may bring a civil action to, among other things, "recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a). Accordingly, standing to sue under ERISA is "limited to participants and beneficiaries." *Pascack Valley Hosp., Inc. v. Local 464A UFCW Welfare Reimbursement Plan*, 388 F.3d 393, 400-01 (3d Cir. 2004) (holding that if plaintiff lacks standing to sue under ERISA, then the

---

[3]     Because Defendant agrees that the health benefits plan at issue is governed by ERISA, Plaintiff voluntarily dismissed its breach-of-contract claim (Count I). (Pl. Opp. Br. at 1). As such, the Court will not address that claim.

court also lacks federal subject-matter jurisdiction to hear the claim).  As ERISA is silent on the issue

of standing, Third Circuit precedent sets forth that a healthcare provider may bring a cause of action

by acquiring derivative standing through an assignment of rights from the plan participant or

beneficiary to the healthcare provider.  *N.J. Brain & Spine Ctr.*, 801 F.3d at 372.  "Healthcare

providers that are neither participants nor beneficiaries in their own right may obtain derivative

standing by assignment from a plan participant or beneficiary."  *Id.* (citing *CardioNet, Inc. v. Cigna

Health Corp.*, 751 F.3d 165, 176 n.10 (3d Cir. 2014)).  But even though a medical provider may

obtain such an assignment, an employment-based health plan is authorized to bar that assignment of

such rights to a medical provider by including an anti-assignment clause in its terms.  *See Am.

Orthopedic & Sports Med. v. Indep. Blue Cross, LLC*, No. 16-8988, 2017 WL 1243147, at *3-4

(D.N.J. Feb. 24, 2017).  And in the Third Circuit, such anti-assignment clauses are enforceable.  *Am.

Orthopedic & Sports Med. v. Indep. Blue Cross Blue Shield*, No. 17-1663, 2018 WL 2224394, at *1

(3d Cir. May 16, 2018).

Thus, the issue presently before this Court hinges on whether the Patient successfully assigned

her rights to Plaintiff under the terms of Defendant's health benefits plan.  Defendant argues, in part,

that "Plaintiff does not have a right of action under ERISA to pursue its claim for additional Plan

benefits because the Plan contains a legally enforceable anti-assignment provision that does not

permit Plan participants to assign their rights under the Plan."  (Def. Mov. Br. at 1-2).[4]  The anti-

assignment provision at issue states in relevant part:

---

[4]     Plaintiff does not contest that the Patient's purported health benefits plan is subject to ERISA.  (*See generally* Compl.; Pl. Opp. Br.).  Rather, Plaintiff points out that the anti-assignment provision at issue is included in the "Summary Plan Description" ("SPD") that, according to Plaintiff, "is logically distinct from the plan it is supposed to summarize." (Pl. Opp. Br. at 2-3).  Plaintiff asserts that the SPD is a document that is separate from the Plan because the SPD "refers to an 'official plan document' that is to govern in the event of a 'discrepancy' between itself and the SPD."  (*Id.* at 3). And, if "the 'official plan document' has not been produced, there is no way of knowing if there are any discrepancies between it and the SPD."  (*Id.* at 4).  So, according to Plaintiff, "it is inappropriate to grant Defendant's Motion based on the contents of the SPD."  (*Id.*).

. . . You may not assign your Benefits under the Plan to a non-Network provider without UnitedHealthcare's consent . . . Direct payment to a non-Network provider shall not be deemed to constitute consent by UnitedHealthcare to an assignment or to waive the consent requirement. When UnitedHealthcare in its discretion directs payment to a non-Network provider, you remain the sole beneficiary of the payment, and the non-Network provider does not thereby become a beneficiary. . . .

(*Id.* at 5; Pl. Opp. Br. at 2). According to Defendant, Plaintiff's Complaint "must be dismissed pursuant to the Plan's clear and unequivocal anti-assignment provision." (Def. Mov. Br. at 8).

In opposition, Plaintiff first argues that it is not barred from bringing this action because the anti-assignment clause limits only the Patient's *right* to assign her rights or benefits to Plaintiff, not the Patient's *power* to do so. (Pl. Opp. Br. at 4-5, 8-14). According to Plaintiff, the anti-assignment clause's limit on the Patient's *right* to assign her rights or benefits to Plaintiff is essentially "a covenant not to assign" and any violations by the Patient can be remedied by money damages, but a violation of that covenant does not void the purported assignment. (*Id.* at 9). Plaintiff argues that the only way the Patient could be prevented from assigning her rights or benefits to Plaintiff is if the anti-assignment clause expressly limits the Patient's *power* to do so, which the anti-assignment clause here does not do. (*Id.* at 9-11). Plaintiff emphasizes that the anti-assignment clause is invalid because it does not specify that any attempted assignment would be "'void' or 'invalid' if performed without

---

In support of its motion, Defendant submitted the Declaration of Suzanne M. Mielke, a Legal Case Information Analyst, who is "personally familiar with the plan documents for the self-funded Michels Corporation Choice Plus Premium Plan . . . , which governs Plan Member Zaina A.'s claims at issue in this case." (D.E. No. 7-1 ("Mielke Decl.") ¶ 1). Mielke further declares that "[t]he SPD is the official Plan document for the Michels Corporation Choice Plus Premium Plan and serves as both the governing Plan document and the SDP." (*Id.* ¶ 2). The Court concludes that "Defendant . . . properly authenticated the benefit plan[] by filing the declaration of one of its legal specialists who certified that based on her personal knowledge, the plan[] submitted by Defendant belonged to the Patient[]." *Progressive Spine & Orthopaedics, LLC v. Empire Blue Cross Blue Shield*, No. 16-1649, 2017 WL 751851, at *4 (D.N.J. Feb. 27, 2017); *see also Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) ("[A] court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document.").

Accordingly, the Court accepts Defendant's authenticated SPD, attached as Exhibit A to the Mielke Declaration (D.E. No. 7-2), as the health benefits plan at issue and refers to it as the "Plan." The Court relies on the Plan in deciding the present motion. *See Kayal Orthopaedic Ctr.*, 2017 WL 4179813, at *3; *Briglia*, 2005 WL 1140687, at *3.

Defendant's consent nor does it state that Defendant will not recognize any such assignment." (*Id.* at 11). In support of this argument, Plaintiff relies on a Third Circuit case that does not pertain to ERISA and applies New Jersey law. (*See id.* at 8-14 (citing *Bel-Ray Co. v. Chemrite (PTY) Ltd.*, 181 F.3d 435, 442 (3d Cir. 1999)).

Next, Plaintiff posits that even if the anti-assignment provision limited the Patient's power to assign, the provision is nevertheless unenforceable because it is "not clear and unambiguous." (Pl. Opp. Br. at 14-16). Finally, Plaintiff argues that the anti-assignment clause is unenforceable against it as a health care provider, relying on a decision from the U.S. Court of Appeals for the Fifth Circuit. (*Id.* at 16-18 (citing *Hermann Hosp. v. MEBA Med. & Benefits Plan*, 959 F.2d 569, 575 (5th Cir. 1992), *overruled on other grounds by Access Mediquip, L.L.C. v. UnitedHealthCare Ins. Co.*, 698 F.3d 229 (5th Cir. 2012)). The Fifth Circuit *Hermann* decision interpreted anti-assignment clauses, such as the one at issue here, to apply only to third-party assignees who may obtain assignments to cover unrelated debts. *See* 959 F.2d at 575 ("We interpret the anti-assignment clause as applying only to unrelated, third-party assignees—other than the health care provider of assigned benefits— such as creditors who might attempt to obtain voluntary assignments to cover debts having no nexus with the Plan or its benefits, or even involuntary alienations such as attempting to garnish payments for plan benefits.").

The Court rejects Plaintiff's arguments because they are contrary to the recognized law in the Third Circuit and in this District. *See Am. Orthopedic & Sports Med.*, 2018 WL 2224394, at *1 ("conclud[ing] that anti-assignment clauses in ERISA-governed health insurance plans are enforceable" and affirming district court's dismissal of complaint); *Emami v. Quinteles IMS*, No. 17-3069, 2017 WL 4220329, at *2 (D.N.J. Sept. 21, 2017) (finding similar anti-assignment provision "clear and unambiguous" and "valid and enforceable"); *Kayal Orthopaedic Ctr.*, 2017 WL 4179813,

at \*3 (finding similar anti-assignment provision to be valid and enforceable); *Specialty Surgery of Middletown v. Aetna*, No. 12-4429, 2014 WL 2861311, at \*4 (D.N.J. June 24, 2014) (same); *Neurological Surgery Assocs. P.A. v. Aetna Life Ins. Co.*, No. 12-5600, 2014 WL 2510555, at \*2-4 (D.N.J. June 4, 2014) (finding that "a provision requiring that coverage may be assigned only with Defendant's consent" is "valid and enforceable").

In light of the foregoing, the Court has reviewed the anti-assignment provision and finds it to be clear and unambiguous, and thus valid and enforceable. As already noted, the anti-assignment provision does not allow assignment of benefits without Defendant's consent. (*See supra* at 4-5). Plaintiff does not allege that Defendant gave such consent. Accordingly, the Patient's assignment of rights or benefits to Plaintiff is void. In the absence of a valid assignment from the Patient, Plaintiff lacks standing under ERISA to pursue this action. *Cf. Neurological Surgery Assocs.*, 2014 WL 2510555, at \*4 (enforcing identical anti-assignment provision and finding that the plaintiff did not have standing to pursue ERISA action against Aetna).

**Conclusion.** For the foregoing reasons, Defendant's motion to dismiss Plaintiff's Complaint based on the existence of the anti-assignment provision is GRANTED, and Plaintiff's Complaint is dismissed with prejudice. Given the Court's ruling, the Court need not address the parties' alternative arguments. An appropriate Order accompanies this Memorandum Opinion.

*s/ Esther Salas*
**Esther Salas, U.S.D.J.**